## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **YVETTE N. BLAIR,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**FEDERAL PACIFIC CREDIT COMPANY, LLC, CONVERGENT OUTSOURCING, INC., AND JOHN DOES 1 TO 10,**<br><br>        **Defendants.** | Civ. No. 20-4100 (KM) (JBC)<br><br>**OPINION** |

**<u>KEVIN MCNULTY, U.S.D.J.:</u>**

This putative class action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The plaintiff, Yvette N. Blair, received a letter from Convergent Outsourcing, Inc. ("Convergent"), regarding a debt owned by Federal Pacific Credit Company, LLC ("Federal Pacific").

Now before the Court is Defendants Convergent and Federal Pacific's motion to dismiss the amended complaint (DE 22) under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **granted**.

I.     **Background**[1]

Blair is subject to an alleged financial obligation arising from a Verizon account, although she disputes the obligation.[2] (Am. Compl. ¶¶ 17-19.) The account allegedly went into default, and Federal Pacific purchased the debt from Verizon. (*Id.* ¶¶ 26-27.) Defendant Convergent sent Blair a collection letter ("the Letter"), a copy of which is attached to the complaint as Exhibit A. (DE 20-1.) At the time the Letter was sent, a claim based on the debt would have been barred by the statute of limitations. (Am. Compl. ¶ 35.)

Because the allegations are based on the Letter, I describe it in some detail. The Letter is on Convergent's letterhead. (Letter at 1.) Below Convergent's address, business hours, and phone number is a rectangle containing the following:

Date: 04/13/2019

Creditor: Federal Pacific Credit Company, LLC

Client Account #: [REDACTED]

Convergent Account #: [REDACTED]

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Am. Compl." | = | Amended Complaint (DE 20) |
| "Def. Brf." | = | Memorandum of Law in Support of Defendant's Motion to Dismiss (DE 23) |
| "Pl. Brf." | = | Memorandum of Law in Opposition to Defendant's Motion to Dismiss (DE 25) |
| "Def. Reply Brf." | = | Reply in Support of Defendants' Motion to Dismiss (DE 29) |

[2]     The facts are described as alleged in the complaint and as apparent in Exhibit A. For purposes of a Rule 12(b)(6) motion, the well-pleaded factual allegations of the complaint are assumed to be true. *See* Section II, *infra.* Curiously, the Complaint alleges "on information and belief" that plaintiff disputes the debt.

Original Creditor: Verizon

Reduced Balance Amount:      $80.51

              Amount Owed:      $230.03

              Total Balance:      $230.03

The Letter is titled "Reduced Balance Opportunity." (*Id.*) The body of the Letter begins by stating that this "notice is being sent to you by a collection agency. The records of Federal Pacific Credit Company, LLC show that your account has a past due balance of $ 230.03." (*Id.*) It then states the following:

> Our client has advised us that they are willing to satisfy your account for 35% of your total balance. The full amount must be received in our office by an agreed upon date. If you are interested in taking advantage of this opportunity, call our office within 60 days of this letter. Your reduced balance amount would be $ 80.51. Even if you are unable to take advantage of this opportunity, please contact our office to see what terms can be worked out on your account. We are not required to make this arrangement to you in the future.

(*Id.*) Below Convergent's signature, on the first page and in all capitals, is the following notice: "NOTICE: PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION." (*Id.*)

At the bottom of the first page is a tear-off payment stub, which describes three "plans": the first provides for a lump sum payment of $80.51; the second provides for a 50% payment over three months; and the last provides for full payment of the debt over the course of 12 months. (*Id.*)

On the reverse side, below two other paragraphs, including a "notice about electronic check conversion," is the following:

> The law limits how long you can be sued on a debt. Because of the age of your debt, Federal Pacific Credit Company, LLC cannot sue you for it and this debt cannot be reported to any credit reporting agency. Convergent Outsourcing, Inc. cannot sue you on this debt and Convergent Outsourcing, Inc. cannot report this debt to any credit reporting agency.

(*Id.*)

In April 2020, Blair brought this suit against Federal Pacific, Convergent, and John Does 1 to 10, alleging violations of the FDCPA, which requires certain notifications and prohibits the use of false, deceptive or misleading representations or unfair practices to collect a debt. *See* 15 U.S.C. § 1692g (prescribing contents of debt collector's initial communication to debtor); 15 U.S.C. § 1692e (prohibiting false and deceptive practices); 15 U.S.C. § 1692f (prohibiting unfair practices).

On January 25, 2021, I granted Defendants' first motion to dismiss the complaint for failure to state a claim without prejudice to the filing of an amended complaint. (DE 18, DE 19.) As I explained in that Opinion, Blair's initial Complaint did not provide sufficient allegations as to the nature of the underlying debt. (DE 18 at 7.) On February 24, 2021, Blair filed an amended complaint. (DE 20. References herein to the "complaint," unless otherwise specified, are to the Amended Complaint.) The amended version of the complaint corrected the original complaint's failure to allege the nature of the debt.[3] On March 10, 2021, Defendants filed this motion to dismiss the amended complaint. (DE 22.)

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation

---

[3]     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Blair has alleged that the debt is in connection with monthly landline and internet services for her family home. (Am. Compl. ¶¶ 20-23). Defendants do not argue in this motion that the Complaint fails to allege a debt.

omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The Court, in considering a Rule 12(b)(6) motion, is confined to the allegations of the complaint, with narrow exceptions:

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] *integral to or explicitly relied* upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). *See also Estate of Roman v. City of Newark*, 914 F.3d 789, 796–97 (3d Cir. 2019) ("complaint, exhibits attached to the complaint, [and] matters of public record" as well as documents "that a defendant attaches as an exhibit to

a motion to dismiss," if "undisputedly authentic" and "the [plaintiff's] claims are based [on them]"); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The complaint attaches a copy of a letter from Convergent, the wording of which is the foundation of the allegations. (DE 20-1.) Its authenticity does not seem to be disputed. I therefore may consider it on this motion without converting it to one for summary judgment.

## III.   Discussion

Blair alleges that Defendants violated Sections 1692e, 1692f, and 1692g of the FDCPA. Defendants move to dismiss the complaint under Rule 12(b)(6), asserting that Plaintiff fails to state a claim because: (1) Plaintiff fails to allege that the Letter fulfils the requirements of § 1692g(a); (2) the Letter identifies the current creditor and the amount of the debt; (3) the discount offers are not false, deceptive, and misleading; and (3) the Letter clearly informs Plaintiff that Defendants could not sue her.

### a.  FDCPA

The FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, *inter alia*, false, deceptive or unfair" debt-collection practices. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). To state a claim under the FDCPA, a plaintiff must allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

To determine whether a particular practice or action violates the FDCPA, courts routinely apply the "least sophisticated debtor" standard. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418–19 (3d Cir. 2015) (internal citations and quotations omitted). In so doing, the standard "gives effect to the Act's intent to protect the gullible as well as the shrewd." *Id.* (internal citations and quotations omitted).

The least sophisticated debtor standard is objective, "meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Id.* The least sophisticated debtor standard "preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 427 (3d Cir. 2018). The debtor, however unsophisticated, must nevertheless "read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008).

### b. Section 1692g

The FDCPA requires that debt collection letters include, among other things, (1) "the amount of the debt" and (2) "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g. The parties dispute whether the Letter adequately did so. As explained below, I hold that it did.

### i. Initial Communication

As a preliminary matter, § 1692g requires that certain items be included in the initial communication or, if not, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a). Defendants assert that Blair has not alleged the Letter was either Convergent's initial communication with her or was made within five

days thereof. (Def. Brf. at 10.) However, the Letter (attached to and deemed part of the complaint) may readily be interpreted as an initial communication.

The disclosures which §1692g(a)(3), (4) & (5) require to be included in the initial communication (or a followup communication within 5 days) are together often referred to as the "validation notice." The Letter includes the validation notice, a strong indication that it is Convergent's initial communication with Blair. Defendants counter that the presence of the validation notice does not necessarily establish that this was an initial communication, because repetitive notices are sometimes permissibly included in subsequent communications. One part of the required validation notice is that a consumer can notify the debt collector in writing within 30 days that the debt is disputed. 15 U.S.C. § 1692g(a)(4). This statement was included in the Letter to Blair. Had this Letter not been the initial communication, the 30-day period presumably would have already begun to run. While it may be permissible to include a second 30-day notice and thereby lengthen the time in which to respond, *see Curry v. AR Res., Inc.*, No. CV 16-517 (RMB/KMW), 2016 WL 8674254, at *2 (D.N.J. Nov. 4, 2016), its inclusion suggests that this was the first communication; there is no indication that the Defendants had decided to grant Blair additional time.

The Defendants are fencing here; presumably, they do not dispute that this is an initial communication or a second communication within five days. If it were not, it is the Defendants, not plaintiff, whose position under the FDCPA might be compromised; the Letter, unless redundant of an earlier letter, could be invalid for the *additional* reason that it constituted a tardy validation notice. Plaintiff's failure to allege explicitly that this was an initial communication amounts to a concession, not a flaw in its case.[4] I will not require that plaintiff rebut in advance an imaginary contention by the Defendants, who are in

---

[4]     That said, we have already been through one motion to dismiss and one amended complaint because plaintiff's counsel, who seems to specialize in FDCPA cases, failed to include essential allegations. The court should not be put to the burden of positing inferences regarding facts well within the plaintiff's control.

control of the facts and may assert, if appropriate, that Convergent contacted the plaintiff earlier.

### ii.   Amount of the Debt

Blair asserts that the Letter leaves unclear whether the amount of the debt is $80.51 or $230.03. (Pl. Brf. at 27.) Both amounts are listed in the Letter: $80.51 as the "reduced balance amount," and $230.03 as both the "amount owed" and "total balance." The body of the Letter states that "your account has a past due balance of $230.03." (Letter at 1.) It then states that the "client has advised us that they are willing to satisfy your account for 35% of your total balance . . . . Your reduced balance amount would be $80.51." (*Id.*) In the payment section, $80.51 is again listed as "reduced balance amount," while $230.03 is listed as the "total balance." (*Id.*)

Even the least sophisticated debtor would understand that $230.03—the larger amount and the number identified as "amount owed," "total balance," and "past due balance"—is the amount of the debt. See *Campuzano–Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Although established to ease the lot of the naive, the [least sophisticated consumer] standard does not go so far as to provide solace to the willfully blind or non-observant."). The $80.51 figure is clearly the reduced, compromise amount that the creditor is willing to accept. In this respect, then, the complaint therefore fails to allege a violation of Section 1692g(a)(1).

### iii.   Current Creditor

Blair asserts that the Letter fails to clearly identify the current creditor, as required under § 1692g. (Pl. Brf. at 23-26.) The FDCPA "does not require that the creditor to whom the debt is owed be labeled 'current creditor.' It simply requires the notice contain the 'name of the creditor to whom the debt is owed.'" *Ward v. I.C. Sys., Inc.*, No. 19-20064, 2020 WL 3604093, at *5 (D.N.J. July 2, 2020) (quoting *Smith v. Simm Assocs., Inc.*, No. 17-769, 2018 WL 4705840, at *3 (E.D. Wis. Sept. 30, 2018), aff'd, 926 F.3d 377 (7th Cir. 2019)); *see also* 15 U.S.C.A. § 1692g(a)(2) ("a debt collector shall . . . send the

consumer a written notice containing . . . the name of the creditor to whom the debt is owed").

The Letter refers to three entities: Convergent, Federal Pacific, and Verizon. The Letter identifies Convergent as a "collection agency" and a "debt collector"; it is on Convergent's letterhead, states it is "being sent by a collection agency," and discloses that "[t]his communication is from a debt collector." The Letter identifies Federal Pacific as the "Creditor" and Verizon as the "Original Creditor." (Letter at 1.) Federal Pacific is the only party identified "creditor," without modification or qualification, anywhere in the Letter. Verizon, identified as "*original* creditor," is named only once, whereas Federal Pacific appears four times. In the payment portion of the Letter, Federal Pacific is listed as "creditor" and is the only party listed. Even the least sophisticated debtor would understand the Letter to be saying that Federal Pacific currently owns the debt that was originally owed to Verizon.

Blair's reliance on *Gross v. Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864 (3d Cir. 2019), is misplaced. In that case, the Third Circuit provided three reasons that the letter at issue failed to properly identify the creditor, Capital One Bank. First, the "letter did not explicitly state that Capital One Bank was Gross's creditor or that it owned his debt." *Id.* at 866. Second, the Letter referred to Capital One as an "assignee." *Id.* Third, the "letter as a whole [did] not effectively disclose the creditor's identity," because it stated that the collection agency "'represents' Capital One Bank and that [the collection agency] is a debt collector." *Id.* at 867. While the letter conveyed the identity of the agency's client and that the agency had been retained to collect a debt, "the least sophisticated debtor could still think that any one or more of the listed entities was owed the debt." *Id.* The letter's reference to three other entities, as well as the confusing legal term "assignee," overshadowed the creditor's identity, potentially sowing doubt. *Id.*

Here, the first two *Gross* justifications are absent, and the letter as a whole cannot be said to overshadow the creditor's identity. Federal Pacific is

the only entity identified as "creditor." The body of the Letter confirms that Federal Pacific owns the debt. The Letter's additional statement that Convergent cannot sue on the debt does not create confusion as to the identity of the creditor. The full context is as follows:

> The law limits how long you can be sued on a debt. Because of the age of your debt, Federal Pacific Credit Company, LLC cannot sue you for it and this debt cannot be reported to any credit reporting agency. Convergent Outsourcing, Inc. cannot sue you on this debt and Convergent Outsourcing, Inc. cannot report this debt to any credit reporting agency.

Thus the letter clearly states that, because of the age of the debt, Federal Pacific can neither sue nor report it to a credit agency. The letter then *adds* that Convergent cannot sue on or report the debt, a statement which is true for perhaps multiple reasons, and does no more than supply additional reassurance.[5]

Therefore, the Letter complies with the FDCPA's requirement that the consumer be provided written notice indicating "the name of the creditor to whom the debt is owed." 1692g(a)(2).

### c. Sections 1692e and 1692f

Blair alleges that the Letter was misleading or unfair, relying on Sections e and f of the FDCPA, including 15 U.S.C. § 1692e(2), (5) and (10) and § 1692f(1). (Am. Compl. ¶¶ 66, 89.) Section 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The section includes a non-exhaustive list of prohibited conduct, including making false representations as to the character or "legal status of any debt," § 1692e(2), threatening to "take any action that cannot legally be taken," § 1692e(5), and using "deceptive means" to "attempt to collect any debt," § 1692e(10).

---

[5]     The statement that Federal Pacific cannot sue is preceded by the clause "Because of the age of your debt." The statement that Convergent cannot sue is not.

Section 1692f prohibits the use of "unfair or unconscionable means" to collect or attempt to collect a debt. 15 U.S.C. § 1692f. This includes the collection of any amount not "permitted by law." 15 U.S.C. § 1692f(1). "A complaint will be deemed deficient under this provision if it 'does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA.'" *Shand-Pistilli v. Prof. Acct. Servs.*, No. 10-1808, 2010 WL 2978029, *6 (E.D. Pa. July 26, 2010) (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)); *see also Evans v. Portfolio Recovery Assocs., LLC*, No. 15-1455, 2016 WL 4059645, at *6 (D.N.J. July 27, 2016) ("[C]onduct that is a violation of another section of the FDCPA 'cannot be the basis for a separate claim under § 1692f.'") (quoting *Turner v. Professional Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 580 (D.N.J. 2013)).

### i. Status of the Debt

Blair argues that the Letter violates the FDCPA by misrepresenting that status of the debt as legally enforceable. (Pl. Brf. at 10.) That claim is not established by the mere passage of the limitation period; the FDCPA permits a collector to seek voluntary repayment of a time-barred debt. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011). That a debt is not legally enforceable does not render it nonexistent. "[Debtor] still owes the debt—it is not extinguished as a matter of law—but he has a complete legal defense against having to pay it." *Id.* Thus there is "nothing inherently deceptive or misleading in attempting to collect a valid, outstanding debt, even if it is unenforceable in court." *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1200 (9th Cir. 2019). A collector may not, however, initiate or threaten legal action that it is not authorized to take. *Id.* Further, collection letters "when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018).

Blair first focuses on the Letter's offer to "satisfy" the account for a percentage discount. (Pl. Brf. at 11.) Blair argues that the offer for a "reduced

balance opportunity" to satisfy your account" at a "discount" is functionally an impermissible settlement offer. In *Tatis*, the Third Circuit held that a "settlement offer," even where a collection letter did not explicitly threaten litigation, could serve as the basis for an FDCPA claim. *Tatis*, 882 F.3d at 425. But *Tatis* reiterated that "standing alone, settlement offers and attempts to obtain voluntary repayments of stale debts do not necessarily constitute deceptive or misleading practices." *Id.* at 430. *Tatis* further declined to "impose any specific mandates on the language debt collectors must use, such as requiring them to explicitly disclose that the statute of limitations has run." *Id.*

Blair cautions it would be simplistic to decide this issue based on the presence or absence of the word "settlement," but the *Tatis* holding does rely heavily on that specific word. To reach its decision, the Third Circuit looked to decisions of other circuit courts, which themselves closely examined the word "settle." *Id.* at 428 (noting that the Sixth Circuit in *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393 (6th Cir. 2015) supported its conclusion "by looking to definitions of the terms 'settle,' 'settlement,' and 'settlement agreement' in six formal and informal dictionaries."); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) ("If a consumer received an 'offer for settlement' and searched on Google to see what is meant by 'settlement,' she might find the Wikipedia entry for 'settlement offer,'" which includes a discussion of civil lawsuits."). "Settle," in short, was found to carry the potential implication that what is being settled is a valid actual or potential lawsuit.

This Letter's use of "satisfy" does not connote litigation in the way "settle" and "settlement" do.[6] The Oxford English Dictionary defines "satisfy," with reference to debt or obligations, as: "to make atonement, reparation, or full payment," "to pay (a creditor) money that is due," and "to pay off or discharge

---

[6]     In relevant part, the Letter states: "Our client has advised us that they are willing to satisfy your account for 35% of your total balance." (Letter at 1.) What is being "satisfied," then, is not said to be a legal claim, but an "account."

fully; to settle in full (a debt); to fulfill completely (an obligation)." *Satisfy*, OXFORD ENGLISH DICTIONARY (Sept. 2019). No definition mentions litigation. Black's Law Dictionary defines "satisfaction" as "the giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation" and "the fulfillment of an obligation; esp., the payment in full of a debt." *Satisfaction*, BLACK's LAW DICTIONARY (2019). "Satisfy" seems a fair word to use where a debt continues to exist despite the inability to legally enforce it, and the message is that it can be discharged for some amount. *See Buchanan*, 776 F.3d at 397 ("There thus is nothing wrong with informing debtors that a debt remains unpaid or for that matter allowing them to satisfy the debt at a discount.").

Blair cites to *Holzman*, an Eleventh Circuit case which extended *Tatis* to cover a letter that offered not to "settle" but to "resolve" a plaintiff's time-barred debt. *Holzman v. Malcolm S. Gerald & Assocs.*, Inc. 920 F.3d 1264, 1270 (11th Cir. 2019). The court decided that "with regard to a collection letter seeking payment on a time-barred debt, an express threat of litigation is not required to state a claim for relief under § 1692e so long as one can reasonably infer an implicit threat." *Id.* at 1271. In reaching that conclusion, the Eleventh Circuit relied on the offer to resolve the debt, as well as the stated urgency for the consumer to accept the offered terms to make payment. Therefore, the Eleventh Circuit found it plausible that a reasonable jury could find the letter would mislead an unsophisticated consumer. *Id.* at 1272. The Third Circuit has not followed *Holzman* or otherwise extended *Tatis* beyond an offer to "settle." I will not extend the scope of current Third Circuit law.

At any rate, there is a key difference between Blair's Letter and the letters in *Tatis* and *Holzman.* Blair's letter includes a notice explicitly stating that the Defendants cannot sue because of the age of the debt. *See Holzman*, 920 F.3d at 1270 ("The question presented by this case asks more specifically: to what extent does the above prohibition extend beyond a threat to sue on a time-barred debt and encompass a potentially—albeit more subtly—misleading offer

14

to "resolve" such a debt *when there is no accompanying disclosure that the debt is time-barred.*") (emphasis added). The back of the Letter here states that "[b]ecause of the age of your debt," Federal Pacific "cannot sue you for it," and it adds that Convergent "cannot sue" either. (Letter at 2 (quoted in full, *supra*).) The disclaimer is imperfect. That Federal Pacific and Convergent cannot sue perhaps leaves open a theoretical possibility that another party could. But the disclaimer does explicitly state that at least the sender and current creditor "cannot" sue, as opposed to "will not" sue. While the notice is on the back of the letter, along with other legal language, there is an instruction on the front in all capitals to "PLEASE SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION." The text of the disclaimer itself is not bolded, italicized, or underlined, but neither is it printed in an unreasonably small font or buried in extraneous text or legalese.

The Third Circuit has held that a clarifying notice can be contradicted or overshadowed by other language in a letter. *See Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142 (3d Cir. 2013). In *Caprio*, the language on the back of the letter—which required disputes to be made in writing—directly contradicted the front of the letter—which instructed recipients to call a telephone number to dispute the letter. Here, however, there is no such contradiction. The front of the letter does not contain a threat of litigation which would contradict the back's disclaimer that Defendants cannot sue. *Caprio* was influenced by the notice's placement and formatting. Here, where the Letter uses "satisfy" and does include a disclaimer, it is not misleading or deceptive.

Blair's contention that the Letter created a false sense of urgency (Pl. Brf. at 15) is unconvincing because the language of the Letter falls well short of that in, *e.g., Holzman.* True, the Letter states that "[w]e are not required to make this arrangement to you in the future." (Letter at 1.) It contains no hard deadline, however, stating only that payment must be received by "an agreed upon date" and that the recipient should call within 60 days if "interested."

15

(Letter at 1). Judge Wolfson has held that a letter similarly stating that the sender is not "obliged to renew this offer" simply means that Defendants are not under any obligation to make this offer to the consumer at all, which is true here as well. *Rozario v. Admin Recovery, LLC*, No. 20-801, 2020 WL 4188131, at *4 (D.N.J. July 21, 2020). Even if the Letter created urgency in some general sense, its language "would not be misleading or deceptive since nowhere in the letter is there any accompanying threat of litigation or other negative consequences." *Id.* at *3 n.1.[7]

This court must read the Letter as a whole. *Id.* at 149 (noting that "even the 'least sophisticated debtor' is expected to read any notice in its entirety"); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 300 (3d Cir. 2008) (analyzing letters "as a whole"). Doing so, I observe that there is nothing inherently wrongful about seeking to collect on a debt as to which suit is time-barred. Here, where the Letter does not use the word "settlement," but instead offers an opportunity to "satisfy" an account, and includes an explicit statement that Defendants "cannot sue," the least sophisticated debtor would not be misled into believing that she had a legal obligation to pay the time-barred debt. The Complaint therefore fails to state a claim under Section 1692e or Section 1692f.

I cannot close without observing that this Letter comes close to the line. It seems designed to be exactly as unclear as is legally permissible. Defendants' brief virtually admits as much: "[I]t is clear that requiring debt collectors to

---

[7]     Blair cites a Fifth Circuit case, *Manuel*, to support her arguments about the Letter's conveyed sense of urgency. (Pl. Brf. at 13 (citing *Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822, 830 (5th Cir. 2020)). The plaintiff in *Manuel* had received four letters. The third was titled "important warning" and stated, "You have only one more opportunity to stop all collection efforts." *Id.* at *824. The fourth stated "Our client has authorized the elimination of this element of your credit history, but we need to receive your complete payment immediately!" The Fifth Circuit held that the "combined effect of the letters' vague language and their silence as to the debt's time-barred nature leaves an unsophisticated consumer with the impression that the debt is enforceable, and that if payment is not levied quickly then adverse collection efforts will follow." *Id.* at 831. Blair's Letter does not convey this level of urgency and includes a disclaimer, and is therefore readily distinguishable.

16

inform consumers that time-barred debts need not be paid would render a collection demand on such a debt so toothless that there would be no point in issuing them." (Def. Brf. at 21.) This admission speaks volumes about the tactics of debt collectors, who speak in legal briefs about moral obligations but never couch their demands for payment in those terms. Be that as it may, the FDCPA does not require creditors to acts as guardians or give debtors good advice; it is primarily a prohibition aimed at statements that would *mislead* debtors. Based on current case law, the Letter does not violate either Section 1692e or 1692f of the FDCPA.

### ii. Discount Opportunity

Blair next argues that the Letter violates the FDCPA by misrepresenting that the debt could be satisfied at a "discount." (Pl. Brf. at 20-22.) Blair contends that because the debt was time-barred and thus not legally enforceable, its value was zero, and receiving a "discount" would therefore be impossible. (*Id.*) As discussed, a debt, despite the expiration of the limitation period, remains a debt. Because the debt continues to exist, offering a discount on it is not inherently misleading.

In support of her argument, Blair relies on a district court case from another circuit, but I am not persuaded. (Pl. Brf. at 27.) That decision concerned a letter which stated: "You have been pre-approved for a discount program designed to save you money." *Gunther v. Midland Credit Mgmt.*, *Inc.*, No. 17-704, 2018 WL 4621764, at *8 (D. Utah Sept. 26, 2018). *Gunther* focused on two aspects of the letter which are missing here: (a) its explicit assertion that it could save the debtor money and (b) its use of "language providing 'we will not sue' instead of 'cannot sue.'" *Id.* ("The offer of a 'discount program,' read together with the conclusion providing that Defendants 'will' not sue, instead of 'cannot' sue, could lead the least sophisticated consumer to believe that Defendants had simply chosen not to sue—not that they were barred from doing so.").

The Ninth Circuit has dealt with an argument similar to that of the plaintiff here: specifically, that a letter was misleading because it stated that the debtor could save money by paying before a certain date, without disclosing that he had the option to pay nothing on a time-barred debt. *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1200 (9th Cir. 2019). The Ninth Circuit explained that, while the debt collector could not mislead the plaintiff, it had no obligation to *encourage* the plaintiff not to pay the debt. The letter accurately explained that if the plaintiff complied, one of the benefits would be a discount on what was owed. *Id.* The Ninth Circuit therefore held that the letter was not deceptive or misleading. *Id.*

Here, too, the Letter's offer of a "discount" on the debt is not misleading, even to the least sophisticated debtor, and any doubt would be cleared up by the notice stating that Defendants cannot sue. (Letter at 2). Plaintiff therefore fails to state a claim under the FDCPA insofar as the Letter provides the opportunity for a discount.

## IV.    Conclusion

For the reasons set forth above, Defendants' motion (DE 22) to dismiss is granted. Because there has been one opportunity to amend, and because this dismissal is based on the text of the letter itself, further amendment would be futile, and the dismissal is with prejudice.

An appropriate order follows.

Dated: September 27, 2021

/s/ Kevin McNulty

_____

Kevin McNulty
United States District Judge

18